# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 20-81129-BPC |
| | Chapter 13 |
| MARQESE PHILANDIS MILLER, | |
|     Debtor. | |
| _____ | |
| MARQESE PHILANDIS MILLER, | |
|     Plaintiff, | |
| v. | Adv. Proc. 21-08001- BPC |
| EUROPEAN CONNECTION, LLC, | |
|     Defendant. | |

## MEMORANDUM OPINION

    This Adversary Proceeding comes before the Court on the issue of damages for willful violations of the automatic stay. The Court entered the Order Granting Default Judgment against Defendant in favor of Plaintiff on May 27, 2021. (Doc. 22). An evidentiary hearing to determine damages was held on June 30, 2021. For the reasons set forth herein, Plaintiff is awarded $14,209.55 in actual damages and $15,000 in punitive damages, for a total award of $29,209.55.

### I.    PROCEDURAL HISTORY

    On January 5, 2021, Plaintiff filed a Complaint alleging willful violations of 11 U.S.C. §§ 362(a)(3), (4), (5), and (6). (Doc. 1). The Summons was issued on January 6, 2021 and served on Defendant by first class mail. (Doc. 4). A response to the Complaint was mailed to the Court by Eddie Barzegar ("Mr. Barzegar"), an individual, who identified himself as a representative of Defendant. (Doc. 6). An initial telephonic conference was set for February 23, 2021, at which Defendant failed to appear. The conference was continued to March 16, 2021 to allow Defendant an opportunity to appear through counsel. Defendant again failed to appear at the continued telephonic hearing. Additionally, Defendant failed to answer the Complaint by February 5, 2021 as required by the Summons.

1

Plaintiff submitted a Request for Entry of Default and the Clerk entered default on March 24, 2021. (Docs. 10 and 11). Thereafter, Plaintiff filed a Motion for Default Judgment (the "Motion") which was scheduled for a telephonic hearing on April 27, 2021. (Docs. 12 and 14). Defendant failed to appear at this hearing, and the Court issued an order requiring Defendant to appear and show cause why the Motion should not be granted. (Doc. 17). Defendant failed to appear at the May 25, 2021 show cause hearing, and the Court granted the Motion. (Doc. 22). After the Order Granting Default Judgment entered, an evidentiary hearing to determine damages was held on June 30, 2021. Defendant further failed to appear at the evidentiary hearing.[2]

## II. JURISDICTION

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This is a final order.

## III. FACTS

Due to Defendant's failure to appear and defend in this case, the Court adopts the facts below as established by Plaintiff in his Complaint.[3] (Doc. 1).

In September of 2020, Plaintiff purchased a 2007 Mercedes-Benz S550 (the "Automobile") from Defendant for $9,000. At the time of purchase, Plaintiff paid Defendant $1,000 in cash and conveyed title to a 2004 Mercedes-Benz S500 with a value of $6,000, for a total payment of $7,000. After applying the $7,000 credit, Plaintiff owed Defendant a remaining balance of $2,000 towards the purchase of the Automobile. On October 7, 2020, Plaintiff paid Defendant an additional $200 towards the remaining balance.

On November 20, 2020, Plaintiff filed a voluntary chapter 13 petition with this Court. In Schedule D, Plaintiff identified Defendant as the holder of a claim fully secured by the Automobile in the amount of $2,115. Plaintiff also included provisions to pay the debt to Defendant in his chapter 13 plan. On December 4, 2020, Defendant attempted to repossess the Automobile at

---

[2] After the June 30, 2021 hearing, the Court discovered that while Defendant had been properly served with the Complaint through its registered agent, Defendant *may* not have received actual notice of any filings after the initial Complaint. To address this potential issue, the Court afforded Defendant another opportunity to appear and defend the Motion. *See* Doc. 39. While Mr. Barzegar made an appearance at the August 17, 2021 hearing, Defendant, a limited liability company, was not represented by counsel at that hearing. Even though the Court gave Defendant additional time to retain counsel, Mr. Barzegar informed the Court at a hearing on September 14, 2021 that Defendant was unable to retain counsel. *See* Docs. 39, 41, and 46.

[3] Well-pleaded facts alleged in a complaint are deemed admitted. *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004).

Plaintiff's home. At that time, Plaintiff informed Defendant's repossession agent that he was in bankruptcy. On December 4, 2020, after the repossession attempt, Plaintiff's bankruptcy counsel (through an assistant) had a phone call with Defendant's representative, Mr. Barzegar, and informed him of Plaintiff's pending bankruptcy case. Additionally, on December 8, 2020, Plaintiff's bankruptcy counsel mailed a letter to Defendant regarding Plaintiff's pending bankruptcy case and demanded Defendant immediately cease and desist with all unlawful activity. Despite these communications with Defendant, sometime between the late evening hours of December 9 or early morning hours of December 10, 2020, Defendant repossessed the Automobile.

During a phone call on December 10, 2020, Defendant acknowledged repossession of the Automobile. Also on December 10, 2020, Mr. Barzegar texted Plaintiff stating that until he received a letter from the bankruptcy court, he was "in my rights to do any thing that law allows me". (Doc. 1). In response, Plaintiff, through counsel, made multiple demands for return of the Automobile. Despite these demands, Defendant refused to return the Automobile to Plaintiff. On December 14, 2020, Defendant mailed a letter to Plaintiff advising him that the Automobile would be sold at a private sale unless Plaintiff redeemed the Automobile for $2,138.21 plus additional expenses. In a communication from Mr. Barzegar to Plaintiff's counsel on December 15, 2020, Defendant acknowledged that, during the initial repossession attempt, Plaintiff informed the agent he was in bankruptcy and the agent informed Defendant of the same. Defendant also acknowledged that the day following the initial attempt to repossess the Automobile, Defendant's representative received a call from "some lady claiming she was with some sort of attorney office" regarding the Automobile. On December 26, 2020, Defendant sent a letter to Plaintiff's counsel including various notices from the Court regarding Plaintiff's bankruptcy case. As of the filing of the Complaint and hearing on damages, Defendant had not returned the Automobile to Plaintiff.

At the hearing on damages, Plaintiff testified that in addition to the $6,000 trade-in value, $1,000 deposit, and $200 payment paid to Defendant for the Automobile, he incurred an additional $2,140 in repairs to the Automobile on December 3, 2020. Additionally, Plaintiff testified that, due to the repossession, he incurred a weekly transportation cost of $150 for twelve weeks for a total of $1,800. After the hearing, Plaintiff's attorney submitted a supplemental affidavit reflecting 15.95 hours of work in this case at $325 per hour for total attorney's fees of $5,183.75 and expenses of $25.80.

3

## IV. ANALYSIS

While there is a strong policy of determining a case on its merits, it is well established that courts have authority to enter default judgment for a party's failure to comply with orders or rules of procedure. *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985). Here, Defendant failed to properly appear in this proceeding despite being given numerous opportunities by the Court. On several occasions (in open court and by written order) the Court explained that Mr. Barzegar, who is not an attorney, could not defend or argue on behalf of Defendant, a limited liability company. *See Pipes v. Weyerhaeuser Company*, 2020 WL 5493212, *1-2 (Ala. Civ. App. 2020), cert. denied, 2020 WL 7089438 (Ala. 2020). Thus, despite Mr. Barzegar's letters and telephonic appearances, a default judgment against Defendant was warranted.

However, Defendant's failure to appear and the Clerk's subsequent entry of default do not automatically entitle Plaintiff to default judgment in the amount requested. A default is not a confession of a defendant's liability or a plaintiff's right to recover, but merely an admission of the well-pleaded facts cited in the Complaint. *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d at 1357. While the facts in the Complaint are deemed admitted, an evidentiary hearing to determine the amount of damages with certainty is necessary when the sums requested cannot conclusively be established by the Complaint. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *Virgin Records America, Inc. v. Lacey*, 510 F.Supp.2d 588, 593 n.5 (S.D. Ala. 2007) (Plaintiff's "allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages.").

### A. Violation of the Automatic Stay

The filing of a bankruptcy petition "operates as a stay" of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). A debtor "injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

Plaintiff contends that Defendant violated the automatic stay by repossessing the Automobile and refusing to return it despite numerous notifications of Plaintiff's pending bankruptcy case. Defendant's acts in repossessing the Automobile and failing to return it were clearly acts to exercise control over property of the estate and to collect or recover a claim. Thus, Defendant violated the automatic stay.

4

Having found that Defendant violated the automatic stay, the Court must next determine whether the violation was willful. A violation of the stay is considered willful if the offending party "(1) knew of the automatic stay and (2) intentionally committed the violative act, regardless of whether the violator specifically intended to violate the stay." *In re Brodgen*, 588 B.R. 625, 629 (Bankr. M.D. Ala. 2018) (citing *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996)). The burden rests on Plaintiff to prove the violation, willfulness, and injury by a preponderance of the evidence. *In re Parker*, 279 B.R. 596, 602 (Bankr. S.D. Ala. 2002). The Court finds that Defendant's violation of the stay was willful.

First, the facts support that Defendant had knowledge of the bankruptcy case and knew the automatic stay was invoked at the time it repossessed the Automobile. Even if Defendant had not received the notices of Plaintiff's bankruptcy case from the Court, the circumstances surrounding Defendant's first attempt to repossess the Automobile on December 4, 2020 provided Defendant ample notice of the bankruptcy case. *In re Johnson*, 501 F.3d 1163, 1173 (10th Cir. 2007) (notice of the filing of a petition need not be formal notice of the commencement of a case where the creditor has sufficient facts which would cause a reasonably prudent person to make further inquiry); *In re McBride*, 473 B.R. 813, 820 (Bankr. S.D. Ala. 2012) (applying *In re Johnson,* 501 F.3d 1163). In addition to Plaintiff expressly notifying Defendant's agent when it attempted to repossess the Automobile on December 4, 2020, Mr. Barzegar had a telephone conversation with someone from Plaintiff's attorney's office on the same day and was informed at that time of Plaintiff's pending bankruptcy case. Even if Defendant did not believe Plaintiff's claims, it is well settled that "once *any* notice is given to a creditor, the creditor has a duty to inquire into whether there has been a bankruptcy filing." *In re Perry*, 521 B.R. 370, 381 (Bankr. N.D. Ala. 2014) (emphasis in original); *In re Bragg*, 56 B.R. at 49 (Finding repossession was intentional and deliberate because "[a] simple telephone call to the clerk's office would have revealed the filing."). Despite this duty to inquire, Defendant not only ignored the verbal notice of Plaintiff's bankruptcy status, but doubled-down and repossessed the Automobile six days later.

Moreover, Defendant intended the actions which violated the stay. After a demand to return the Automobile by Plaintiff's counsel, Defendant acknowledged through written response that he had been notified by both Plaintiff and Plaintiff's counsel of the pending bankruptcy but still refused to return the Automobile. Additionally, on December 26, 2020, Defendant sent a letter to Plaintiff's counsel acknowledging he received the formal notices from the Court. Despite

5

acknowledgement of these notices from Plaintiff, Plaintiff's counsel, and the Court, Defendant refused, and continues to refuse, to return the Automobile. Defendant's violation of the automatic stay was deliberate and willful.

### B. Damages for Willful Violation

When a party willfully violates the automatic stay, § 362(k) mandates an award of damages if there is injury as a result of the violation. *See In re Hutchings*, 348 B.R. 847, 852 (Bankr. N.D. Ala. 2006) ("[W]hile stay violations may be inherently wrong, they are not inherently harmful."). Plaintiff argues that as a direct and proximate result of Defendant's conduct, Plaintiff has been damaged and injured in that he suffered anger, anxiety, distress, fear, frustration, loss of money and loss of sleep. *See* Doc. 1. Moreover, Plaintiff requests fees and costs since he employed the services of an attorney to assist with prosecuting this matter. *Id.*

#### i. Actual Damages

In the Eleventh Circuit, actual damages mean "[r]eal, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed . . . to 'nominal' damages [and] 'punitive' damages." *McMillian v. F.D.I.C.*, 81 F.3d 1041, 1055 (11th Cir. 1996). Additionally, as specifically provided in § 362(k)(1), a successful plaintiff who brings an action for a willful violation of § 362 is entitled to attorney's fees and costs as actual damages. 11 U.S.C. § 362(k)(1); *In re Horne*, 876 F.3d 1076, 1081 (11th Cir. 2017) ("This explicit, specific, and broad language [of § 362(k)(1)] permits the recovery of attorneys' fees incurred in stopping the stay violation, prosecuting a damages action, and defending those judgments on appeal.").

The evidence here shows that Plaintiff suffered actual damages in the loss of equity he retained in the Automobile, as well as out of pocket expenses incurred because of Defendant's repossession of the Automobile. The Automobile was purchased in September 2020 for $9,000 and repossessed three months later. There is no evidence before the Court as to what the value of the Automobile was on the date of repossession. While Plaintiff testified that he incurred expenses in making repairs to the Automobile prior to repossession, there is no evidence that these repairs increased the value of the Automobile. Additionally, there is no evidence before the Court to show a depreciation of value in the Automobile between the purchase date and the repossession date. Thus, the Court finds that the Automobile's value is $9,000. Given that, Plaintiff owed approximately $1,800 on the debt to Defendant. While the Court acknowledges interest and fees

may have been due and owing at the time the Automobile was repossessed, there is no evidence to support the total amount of those fees. The Court accepts Plaintiff's calculation that $2,000 was the remaining balance due when the Automobile was purchased by Plaintiff. Because Plaintiff made a payment of $200 in October leaving a debt of $1,800 due to Defendant on the date the Automobile was repossessed, Plaintiff's lost equity in the Automobile is $7,200.

The expenses incurred by Plaintiff as a result of Defendant's violation are also recoverable. Plaintiff testified that he incurred a weekly transportation cost of $150 for twelve weeks for a total of $1,800. Additionally, despite attempts to mitigate damages, Plaintiff incurred attorney fees of $5,183.75 and expenses of $25.80 in bringing this action. *In re Vaughn*, 542 B.R. 589, 601 (Bankr. M.D. Ala. 2015), *aff'd in part, vacated in part, remanded sub nom. Cent. Mississippi Credit Corp. v. Vaughn*, 555 B.R. 803 (M.D. Ala. 2016), vacated, 2016 WL 7107769 (M.D. Ala. Dec. 6, 2016) ("To recover costs and attorney's fees for a violation of an automatic stay, a plaintiff generally must first attempt to mitigate damages by communicating directly with the violator."). Plaintiff informed Defendant that he was in bankruptcy prior to the first repossession attempt and multiple times after the repossession. The Court finds that the attorney's fees and expenses incurred by Plaintiff in litigating this case are reasonable and will award total attorney's fees and expenses of $5,209.55. While Plaintiff alleged damages for anger, anxiety, distress, fear, frustration, and loss of sleep in the Complaint, there was no evidence of these damages set forth at the hearing. Thus, the Court will award Plaintiff actual damages in the amount of $14,209.55.

### ii. Punitive Damages

In appropriate circumstances, a plaintiff may also recover punitive damages for willful violations of the automatic stay. *See* 11 U.S.C. § 362(k)(1). To determine what are "appropriate circumstances" giving rise to punitive damages, courts typically consider the following factors: "(1) the nature of the defendant's conduct; (2) the nature and exten[t] of the harm to the plaintiff; (3) the defendant's ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor." *In re Brodgen*, 588 B.R. at 631 (citations omitted).

#### 1. Nature of the Conduct

The Court finds that Defendant's conduct in this case was egregious. The Court has no doubts that Defendant knew its conduct was in violation of the automatic stay, yet it proceeded to move forward with repossession despite multiple verbal notices of Plaintiff's bankruptcy case. While Mr. Barzegar may not have believed the verbal notices, those notices engendered a duty to

inquire. Defendant ignored this duty even though it would have taken little effort to confirm the status of Plaintiff's bankruptcy case prior to repossessing the Automobile. At a minimum, Defendant could have checked the public records or called the clerk of the bankruptcy court to confirm the status of Plaintiff's case. In further disregard of the bankruptcy process, Defendant ignored attempts from Plaintiff's counsel to remedy the violation and mitigate damages. In fact, Defendant still refused to return the Automobile to Plaintiff even after it received notices from this Court confirming Plaintiff was in bankruptcy. Defendant's conduct in repossessing the Automobile and then refusing to return the Automobile was calculated, knowing, and warrants an award of punitive damages.

### 2. *Nature and Extent of Harm to Plaintiff*

Plaintiff established that he suffered considerable harm by way of actual damages in the amount of $14,209.55. In addition to losing the equity he had invested in the Automobile, Plaintiff also had to find alternative transportation, and incur legal fees and expenses. The damages suffered by Plaintiff are severe and warrant an award of punitive damages.

### 3. *Ability to Pay*

There is no evidence before the Court as to Defendant's ability to pay. While Mr. Barzegar stated on record that *he* could not afford to retain counsel, there is no evidence submitted as to Defendant's financial position.

### 4. *Motives of Defendant*

Defendant's motives in this case can be inferred from the communications between Defendant's representative, Mr. Barzegar, and Plaintiff's counsel. These communications evidence that Defendant's representative was irate due to the timing of Plaintiff's bankruptcy case shortly after Plaintiff purchased the Automobile from Defendant. As such, Defendant ignored notices and rules and took matters into its own hands instead of going through the proper channels in bankruptcy court. The automatic stay exists to avoid the very acts in which Defendant engaged, and Defendant's motives in this case warrant punitive damages to deter future similar conduct.

### 5. *Any Provocation by Plaintiff*

While courts do consider whether a debtor did anything to bait a creditor into violating the automatic stay, there is no evidence of that here. In fact, the evidence in this case supports the opposite. Plaintiff informed Defendant's representative of his bankruptcy during the first attempt to repossess the Automobile and then gave Defendant multiple opportunities (both verbal and

8

written) to remedy the violation prior to filing the instant adversary proceeding. Considering the factors together, the Court concludes that the undisputed facts support the imposition of punitive damages.

### iii. Amount of Punitive Damages

Concluding punitive damages are warranted, the Court must next determine an appropriate amount. Courts are to consider the relationship between actual harm suffered and punitive damages. *In re Brodgen*, 588 B.R. at 632. The amount of punitive damages that a court may award is limited by the Due Process Clause of the Fourteenth Amendment and cannot be grossly excessive or arbitrary. *Cent. Mississippi Credit Corp. v. Vaughn*, 555 B.R. 803, 816 (M.D. Ala. 2016). When awarding punitive damages, Courts should consider the following factors: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded . . . and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003).

Here, Defendant's conduct was egregious. This is not a case where a creditor simply failed to put in safeguards to avoid inadvertently violating the automatic stay. Particularly reprehensible here, Defendant was informed of Plaintiff's bankruptcy case during its first attempt to repossess the Automobile, and it ignored that notice and the multiple notices it received thereafter. Defendant also ignored the settlement and negotiation attempts by Plaintiff's counsel after the repossession. However, the egregiousness does not end with Defendant's refusal to accept the authenticity of multiple verbal notices, because even when Defendant was in possession of the notices from the Court regarding the bankruptcy case, it still refused to return the Automobile or remedy its violation despite ample opportunity to do so. Instead, Defendant continued to make collection demands. This was a blatant and active disregard of the automatic stay. Considering the actual damages awarded to Plaintiff with the knowing and intentional acts of Defendant, the Court finds that punitive damages in at least the amount of the actual damages are warranted to deter similar behavior from Defendant in the future. As such, Plaintiff is awarded $15,000 in punitive damages.

### V. CONCLUSION

The Court concludes that Plaintiff offered sufficient evidence to prove a willful violation of the automatic stay under § 362(a), and the acts of Defendant were sufficiently egregious to

9

Case 21-08001  Doc 48  Filed 09/28/21  Entered 09/28/21 13:39:28  Desc Main
Document      Page 9 of 10

support an award of actual damages in the amount of $14,209.55 and punitive damages in the amount of $15,000, for a total judgment of $29,209.55. The Court will enter judgment by way of a separate document.

Done this 28th day of September, 2021.

Bess M. Parrish Creswell
United States Bankruptcy Judge

c:  Debtor/Plaintiff
    Anthony Bush, Attorney for Plaintiff
    Defendant